Arguments not to exceed 15 minutes per side. Mr. Magidson, you may proceed for the appellant. Thank you. May it please the court, this is Mark Magidson on behalf of defendant appellant Alvin Ray and I would just like to reserve three minutes for rebuttal if necessary. Very well. Thank you. As this court knows, this matter was remanded to the trial court to conduct an evidentiary hearing regarding the suppression of his confession. Mr. Ray contended that his written Mirandized confession was involuntary due to the fact that he had given a statement that was not Mirandized just some 60 minutes approximately earlier. In this court's initial opinion, as you know, the court adopted the multi-factor test that's set forth in Missouri v. Seabird. And interestingly, there's the multi-factor test that was adopted by this court regarding the admissibility of statements after midstream Miranda warnings. And what this court adopted and was mentioned in Seabird was whether or not the admissibility of statements given after midstream Miranda warnings hinges on, quote, whether a reasonable person in the suspect's shoes could have seen the station house questioning as a new and distinct experience. And whether Miranda warnings could have made sense as presenting a genuine choice as to whether follow up on the earlier admission. So, in other words, the standard is basically from Mr. Ray's point of view, from his shoes, how did he see the situation? Well, in this case, Mr. Ray saw this as one continuous interrogation. And the threat to arrest his long-term girlfriend of over 19 years, the fact that it was futile to deny what he had just admitted just an hour earlier, constrained him to admit in writing what he had just admitted 60 minutes earlier. Now, as guidance to determine what a person in Mr. Ray's shoes experienced, the court, in adopting those multi-factors, identified the following for the trial court to evaluate. First, in terms of the first statement, the completeness and detail in questions and answers in the first round of interrogation. Second, the overlapping content of the two setting of the first and second interrogations. Fourth, the continuity of the police personnel. And finally, the degree to which the interrogators' questions treated the second round as continuous with the first. So, in this case, I believe it's important to understand, at least initially, a brief background of the parties. Mr. Magnuson. Yes. This is Judge Marbley. Yes, sir. The district court found that at most, or that, I'm quoting, at most, a police officer asked Ray and me whose guns are these, and Ray individually, have you ever been in jail before? Ray testified that he responded by saying, those are my guns and I have been to federal prison. The district court, based on that, concluded that Ray's answers at the house were incomplete. If that's the case, was it appropriate for the officers to resume their interrogation at the station house along this same line? No, because those questions that were elicited from Ray at the house were non-Mirandized. The officers are certainly free to ask him biographical data. What's your name? Give me your driver's license. Certain things like that, just to gather basic information. How about, have you ever been to jail? Well, I mean, if there's guns in the house and you ask a question, have you ever been to jail, what's the purpose of that? The purpose of that is then to gain a tactical advantage, which they did do, and say, ah, you've been to jail before, and he's been admitted to being in prison. At this point, they now know that he's at the very minimum a felon in possession, and so they can enhance it and start giving him those credible threats and intimidation. So it's my view that sometimes what would normally be considered to be a non-invasive or an innocent question, in certain circumstances, in this case, it's an interrogation designed to elicit incriminating information. But if this panel accepts Judge Cohen's facts, then could we still reach the conclusion that you urged in response to my previous question? Yes, because even assuming that, you know, have you ever been to jail before? And he says, yeah, I have a drug, whatever the case was. To me, that goes beyond, that's an interrogation. And based on that, if they asked him, you know, his name, his, you know, identification, social security number, whatever else to a driver's license number. These are due to unforeseen circumstances. Approximately 30 seconds of this audio recording has been lost. Interrogation at the house was impractical. That's right. Because it already, it was a slippery slope. It led to him acknowledging that he was a felon, that now the police had at least constructive possession of these weapons. And there it went. So had he been Mirandized and had it been done properly? Because there's no question that he was under arrest. There was no question that he was not free to leave. And so what's the purpose then of engaging in all this interrogation? And that's combined with the fact that what I was going to suggest is that, you know, in this situation, Mr. Ray and Cara Lee, his girlfriend, are together for nearly 20 years, longer than most people are married. They've had a teenage son together. The home is owned by Ms. Lee's mother. They lived in that house, Mr. Lee and Ms. Lee and Mr. Ray lived together in that house for many, many years. And they, Ms. Lee and her mother just recently relocated, but many of their possessions were there. And it was ascertained that Ms., that Cara Lee had a good job working with the Wayne County Circuit Court clerk's office, which if you're arrested on a drug and gun charge in a drug house, that job is in jeopardy. So, and further, the raid was conducted in the morning, early morning when Ms. Lee and Mr. Ray were in their bedroom undressed. The police called out, they ordered, I'm sorry. I didn't mean to cut you off. I thought you were winding up there. This is Judge Clay. I wanted to ask you a follow-up to Judge Mobley's question. It seemed as though the district court in its order on remand following the evidentiary hearing found that your client was not credible in saying that he was interrogated at the house and made a finding that the police were credible, but your client was not. And based upon that, we would have to decide if we take the, if we accept the finding of the district court, that there could be no CBER violation since there was no, there were no statements taken in violation of Miranda at the house. Yes. So based upon, and of course the argument, and I would think the government's going to argue that we have to accept the district court's credibility findings. What do you have to say about that? Well, and I, obviously I respect Judge Cohen's, as a jurist, but I think that one of the main things that he, that at least the government points to is the fact that at the trial, Mr. Wray says it was Officer Hill, also known as Wolverine, who did the interrogation or made the threats and so forth. Later at the evidentiary hearing, he identified, I believe it was Officer Wynick as the person who did it, two different people. But here's the situation, and maybe it wasn't really brought out sufficiently for Judge Cohen to understand this. Officer Hill died in an unrelated incident prior to the trial, so he did not testify. Officer Wynick did not testify at the trial, but as soon as he walked into the courtroom at the evidentiary hearing, Wray identified him as the person. That's the very first time that he was able to see the person who actually initiated the questioning and the conversation. So that's my response. Secondly, the police testified, oh, we didn't ask him any type of these questions. We just talked about the weather and sports. We didn't talk about the very reason we were there to search the house for guns and drugs. I mean, credibility goes both ways, and I think that strains credulity to say that the police are just talking about the sporting events, oh, it's a hot day today, and how about them tigers? I doubt it. So you can see between the lines here, and I think that there was conversation, there was improper interrogation, it wasn't Mirandized, and that the taint of the non-Mirandized statement wasn't cleansed by the subsequent Mirandized statement in the second statement. That's my position on that. Mr. Magson, your 12 minutes has expired. And with that, I thank the court. Thank you. We'll hear from the government. Thank you, Your Honor. May it please the court, this is Shane Crawley. I represent the United States. As you alluded to, Judge Clay, this appeal turns on the credibility finding of Judge Cohn. As the court is well aware, when there are two permissible views of the evidence, the fact finder's choice cannot be wrong, and a finding of fact that's anchored in a credibility assessment is not subject to reversal. And here, that's exactly what we have. Judge Cohn found, after hearing the testimony at trial, as well as the testimony in the evidentiary hearing, after hearing from all of the officers, with the exception of Officer Hill, as Mr. Magson alluded to, that Mr. Wray was simply not credible, and that there were no threats, implicit or explicit, that prompted any sort of statement at the home. In other words, Judge Cohn credited the police officers. They all were consistent that there was no threat, implicit or explicit, to arrest Ms. Lee, and moreover, they all testified consistently that Alvin Wray made no statements whatsoever with respect to the guns or the drugs while in the house. That credibility determination is the end of the analysis, because as you mentioned, there cannot be a Siebert violation if there was not a statement made in violation of Miranda. All right. This is Judge Clay. You know, ordinarily, you might be right that we would, under ordinary circumstances, have to accept the credibility determination of the district judge who conducted the evidentiary hearing. However, this case is a bit different, or there may be a problem with the district judge's credibility determinations, because there were two people there as witnesses who were present at the interrogation at the home if an interrogation occurred, and who were also there together if an interrogation did not occur, in addition to the defendant, Mr. Wray. Ms. Lee, the girlfriend, was there, and she testified at the evidentiary hearing, and her testimony seemed to corroborate and mirror the testimony and support the testimony of the defendant. However, when the district judge made his credibility determination, he did not comment upon the testimony of Ms. Lee, who was a major witness at the incident or the events there at the home. To the extent that the credibility determination was made only as to the defendant and omitted any discussion of the girlfriend and her testimony, we as the appellate court is left to wonder why the district court did not fully address the evidence that the district court had before it as it went about making its credibility determinations, and that would seem to present something of a problem for us if you could address that. I'd be happy to, Your Honor, and I think the simple answer is that Judge Cohen was trying to be respectful and not essentially say that Ms. Lee was not telling the truth. That doesn't seem like much of an argument that the court won't address the evidence because he's afraid somebody won't think he's respectful. I just don't even get that as an argument. She gave vital testimony at the evidentiary hearing, and the district judge omitted that and didn't discuss it, didn't say why he was either discounting that testimony or found her credible or not credible, whether the defendant's testimony, which ordinarily might seem not credible, would be credible in light of the girlfriend's testimony. My view is the judge cannot deal with evidence based upon being concerned about somebody's feelings. I'm not following that argument. Well, I'd be happy to explain further, Judge. If you look at what was said, Judge, Kara Lee, Mr. Ray's girlfriend, she contradicted herself and the testimony of Mr. Ray. If you look at the testimony that transpired between the trial as well as at the evidentiary hearing, there were effectively four different versions of what transpired, and the version that Judge Cone was that of the officers. Now, while it would have been nice if he would have had more counsel, the officer's testimony, and I want you to get back to answering Judge Clay's question because I have the same question, but the officer's testimony was inconsistent on several points, too, and the district court seems to have glossed over those inconsistencies. Is there a particular inconsistency that you're most concerned about? Okay, for instance, Officer Dale admitted that the police spoke with Lee and Ray and left open the possibility that someone did not ask, did ask about who owned the guns, did what, what is it, Wednesday, admitted that he was in the living room with Lee and Ray, that he remembered talking about employment, but that he did not recall anyone asking Lee questions or anyone admitting possession. Then Wachowski saw Kild and Robinson talking to Lee and Ray in the living room, but he couldn't make out what they were saying. Then Robson admitted that he had a conversation about Ray's and the fact that Lee worked for a friend of the court's office. He also admitted that it would be possible that someone asked Ray who owned the guns, but he testified that he couldn't remember any other details. Then Sloan testified that he was in the living room for over an hour. He talked to Ray about the weather and other incidentals, but he did not ask Lee or Ray any substantive questions. Sloan also left open the possibility that someone else asked Lee about who owned the guns, because there was never a time when, you know, one officer was always with Lee and Ray together. None of the officers' testimony, you know, flatly contradict the assertion from Lee and Ray. And Judge Cohen didn't deal with that. Well, Judge, again, I think that is... The fact that they left open the possibility does not mean that it transpired, and that's what Judge Cohen said, is that no officer... If we look specifically at page 1382 of his decision, he said that Ray's testimony was not credible, and that frankly is the credibility determination. He credited the testimony of the officers and said no testimony by any police officer at trial or the evidentiary hearing supports Ray's account of a police officer making a remark about arresting Lee. And going back to Judge Clay's point, Kara Lee did testify. She contradicted her testimony from trial, where she didn't raise any of this. She just mentioned that the police had a conversation with Ray, and there's no question they did. It's very standard that you would have a question answering about booking questions as well as small talk while whoever is monitoring someone that's in detention waits for the other officers to conclude their search. But she did not say that there were any threats made. She did not talk about Wolverine or Officer Hill. And then when we turn to what happened at the evidentiary hearing, there, three years later, she somehow has a much more detailed account of what happened, and that account mirrors that of Alvin Ray at the point between the trial and the evidentiary hearing. The credibility determination by Judge Cohn is anchored by the facts, and that is the end of the analysis, frankly, from this court's jurisprudence. This is Judge Clay. Actually, my concern was not the substance of the girlfriend's testimony, but the fact that the district judge did not make any determination and did not really comment upon the credibility of her testimony and made no findings. So maybe her testimony was not credible. Maybe it was. Maybe it was excellent testimony in support of the defendant, or maybe quite to the contrary. But the concern is that we don't know how the district judge evaluated her testimony, because even though she was a central witness at the evidentiary hearing, he made no comment upon the findings with regard to her credibility, the weight of her testimony, or anything else. Judge, I would concede that that would have been ideal. However, I think that once you take into account that he credited the officer's testimony, and also when you look at the analysis, and frankly, that finding of fact would resolve the issue. And even without that, I think that the court can still resolve this and say that there was no statement taken in violation of Miranda at the home, and therefore, there is no need to conduct a full Siebert analysis. But even if we assume that a statement was made, which is what Judge Cohn did going on for the rest of his decision, he assumed, as you indicated, he said, at most, if an officer said, whose guns are these and have you been to jail, and I disagree with Mr. Magnuson's contention that that would have a problem, given that there were already 49 bags of crack cocaine and 31 bags of marijuana. Mr. Ray's prior felony, frankly, was not needed in order to arrest him or anything of that nature. But even if you assume those statements were made, an evaluation of the Siebert factor shows that there was ample difference between the first statement and what was given afterward. This is nowhere close to the deliberate continuous interrogation that Siebert was designed to address, and this is far more likely like what happened in Elstad, which Siebert itself, the court in Siebert said that Elstad, where you had a situation where a statement given, a brief inculpatory statement given at the home, and then another statement at the precinct, those are very distinct situations where a Miranda given at the precinct, the person there would have the opportunity to decide, do I want to give a statement or not? Those are distinct enough that those statements are effective, that that warning is effective, especially when we look at the totality of the circumstances. This was not Mr. Ray's first exposure to the criminal justice system. As we've already heard, he was a felon, and so he's well aware of the ramifications of making a statement on the record. But he chose to waive his Miranda rights and then proceeded to give a statement in which, frankly, he contradicts what he said he gave at the home. I mean, at the house, he's claiming that he accepts responsibility for the guns, but when you go to the station, he distances himself from the shotgun, I recall. He said he knew about the cocaine, which he never alleged was discussed in the home. He talks about the fact that he sold marijuana as well as the source of his marijuana and how much he was acquiring to resell. In fact, Mr. Ray, when he waived his Miranda rights, he affirmed that he had not been threatened or promised anything in any way. Now, he tried to take that back at trial, but even if we look at the credibility finding that Judge Cohen did make, Mr. Ray is not a credible individual. And so the fact that he is trying to take back that waiving of Miranda, he knew full well the ramifications. And if we apply the Siebert factors, there's no question that this is not a continuous midstream Miranda designed to somehow trick him into reaffirming a confession he's already given. This is not the sort of situation that Siebert was designed to address. The first interrogation was far limited to the extent one occurred, and I'm not conceding that, but if we look at the assumptions that Judge Cohen made, interrogation was far limited, and the statement, moreover, was extremely limited, only about the guns, not talking about the crack cocaine, the marijuana package for sale and so on. The overlap of the two statements is, again, very minimal. If we look at the location, obviously the fact that it took place at the precinct, that is a distinct setting, very different. He's had at least an hour and as much as two hours to think and reflect. And then we have officers that are not involved. Even if we assume that his testimony was correct in the evidentiary hearing, there he's saying it's Officer Weinsack, and it's Officer Robeson and Hill that interrogate him at the precinct. And finally, the officers are not treating this as that sort of continuous interview, where this continuous interview where Miranda breaks it up in order to essentially get an individual to admit to something they've already done. Your Honor, I would submit that this is nothing like what Siebert was designed to address. Frankly, I don't think Siebert's the appropriate test, given the credibility finding, but I do understand that that may be of concern, but I do think that if you apply the factors, there's no question that the Miranda warnings given to Mr. Ray were effective, and there's no further issue here. Thank you. Thank you. Any rebuttal, Mr. Magnuson? Yes, just briefly. And the fact is that Ms. Lee did testify. She did comment on page 1176 of the transcript that she testified that a Caucasian officer, which happens to be Mr. and Ray responded that he'd been to federal prison, and the officer said, quote, well, we're going to see if we can get you some good time this time. You're selling drugs in my community. You're destroying my community, and so forth. And she goes on, and Ms. Lee has no felony conviction. She's employed. She's got a good job. She's a credible individual. As it relates to whether or not the factors here point in a direction as to whether this is one continuous event, we believe they do. The questions and interrogation at the house went to the heart of the matter. They were to the core. They questioned Ray regarding marijuana, the guns, his prior felony record. That was the key. They didn't need to get a whole, every detail, but they got the core information. The questions at the station overlapped. He again admitted the gun was his. They only need one gun. They don't need a dozen guns. He admitted to selling marijuana. They did the same thing. The Mirandai statement was somewhat more detailed, but both were essentially the same at the core. The continuity of the police, the very same police that were there at were there 60 minutes later interrogating him at the station, the same people. They were all together. The degree to which the interrogators' questions treated the second round as continuous of the first, the questions in the second round were derivative of the first round. The questions asked in the second round reflected the fact that the police already knew the answers. That is, which guns were found in the house belong to you, or do you just sell weed? Were you aware that you're a convicted felon? They already knew the answers to that, so that's how they were putting it down. Based on these factors, it's clear that the first statement tainted the second statement, and the second statement was not cleansed of this taint by the reading of the Miranda in midstream. The confession was not voluntary. It should have been suppressed. The trial court erred in not so doing. He's entitled to a new trial. Thank you very much. Well, thank you, and the case is submitted, and if we could arrange to have the counsel removed from the call, then the judges can confer. Certainly will. Mr. Crawley, Mr. Magidson, you can hang up now.